ELIZA M. BROWN *vs.* OTIS WENTWORTH & another.

Essex.   January 20, 1902. — March 1, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Mortgage,* Redemption, Foreclosure sale.

A mortgagor has not as matter of law a right to redeem after a foreclosure sale and before the conveyances are executed to carry it out. *Semble,* that, even before the sale, if the property has been advertised, under St. 1888, c. 433, a bill to redeem cannot interrupt the mortgagee's right to proceed to conclude the mortgagor's rights, unless the amount due is paid into court or an injunction issues.

In an attempt to comply with Pub. Sts. c. 181, § 17, St. 1882, c. 75, a mortgagee's advertisement of a foreclosure sale of land in Hamilton was published in the Wenham-Hamilton Times, which the mortgagee's agent supposed to be issued in Hamilton, but which.in fact was issued in Beverly in the same county. No paper was printed and issued in Hamilton. There were twenty-four subscribers there to. the Wenham-Hamilton Times. *Held,* that probably it was a mistake to suppose that the paper was published in Hamilton in such a sense as to make the choice of it compulsory ; but, if not published there, it was a "newspaper published in the county where the mortgaged premises are situated" and fulfilled the requirement of the statute.

A first mortgage embraced three lots. A second mortgage covered these lots and three others. Foreclosure sales under both mortgages were advertised for the same time, the sale under the first mortgage as in front of a hotel on the premises, and that under the second mortgage as in front of a barn across the road from the hotel. The sale under the first mortgage took place first, so that under the second mortgage there remained only three lots to sell, although the advertisement had announced a sale of six lots, the first three subject to the first mortgage. The sale in form followed the advertisement. The persons present at the first sale walked across the road and attended the second, understanding what had been done. The lots not included in the first mortgage brought a fair price at the second sale. *Held,* that the sale was good.

BILL IN EQUITY, filed June 9, 1899, to redeem from two mortgages, the first for $5,000 covering three parcels of land, and the second for $1,700 covering the same parcels and three others adjacent thereto, all on the shores of Chebacco Lake in Hamilton in the county of Essex and the first three parcels having thereon a hotel known as the Winnepoyken House.

At the trial in the Superior Court, before *Pierce,* J., without a jury, the plaintiff asked the judge to make the following rulings :

1. That upon all the evidence the plaintiff is entitled to redeem. 2. That the plaintiff, as of right, is entitled to redeem by having brought his bill and offering therein to pay what is due, previous to the conveyance of the property to the purchaser. 3. That the evidence discloses that the defendant, Wentworth, the mortgagee, in view of the location and character of the property, failed to exercise proper diligence and fairness in the sale thereof. 4. That the attempted sale of the six lots included in the second mortgage after an attempted sale of the first three therein embraced under the power of sale in the first mortgage, is an invalid execution of the power of sale, and rendered the sales void. 5. That when the defendant Wentworth advertised to foreclose under both mortgages simultaneously, he was confined to a sale under the second mortgage. 6. That a sale of the three lots under the power in the first mortgage rendered void the sale of the same premises under the second mortgage. 7. That the conduct of the purchaser at the sale in inducing an intended purchaser to refrain from bidding, rendered the sale invalid.

The judge refused to make any of these rulings, and made the following findings of fact: 1. That Wentworth exercised all proper and reasonable diligence in the matter of the publication of the notice of the foreclosure, and acted in entire good faith and with a reasonable regard to the rights of the mortgagor. 2. That the property was fairly and properly sold and brought a fair price. 3. That Oliver F. Kilham did not intend to become a *bona fide* purchaser of the property sold under the second mortgage, but did intend to intimidate would-be purchasers by threatening to run up the property and to extort a money payment as a condition of his refraining from bidding thereon and that the payment to him by Allen, one of the purchasers at the sale, was made under such pressure and was not intended by Allen to interfere or deter Kilham from making any honest bid. 4. That the sum bid upon the second sale was a fair price for the lots not included in the sale under the first mortgage.

The judge ordered the bill dismissed without costs, and the plaintiff appealed. At the request of the plaintiff, the judge reported the case for the consideration of this court. If the

decree entered was right, it was to be affirmed; otherwise, such decree was to be entered as law and justice might require.

In regard to the publication of the Wenham-Hamilton Times, in which the sale was advertised, one Vittum, a witness for the plaintiff, testified as follows:

"I live in Beverly and publish the Wenham-Hamilton Times, and also publish the Beverly Evening Times, the Essex County Mercury and the Beverly Weekly Times; all weeklies except the Beverly Evening Times; in May and June, 1899, there were twenty-four subscribers to the Wenham-Hamilton Times in the town of Hamilton; I couldn't say how many in the town of Wenham; one hundred and twenty-five copies of the paper were printed; it goes to Wenham and outside subscribers, but mostly to Hamilton and Wenham; all these papers were printed in the same place in Beverly, Mass.; in May and June of 1899, there were four hundred copies of the Essex County Mercury printed; this is a home paper and sent through the county to the different homes; I have no office in either Hamilton or Wenham; . . . I received directions to insert advertisement in reference to foreclosure of mortgages on Winnepoyken property from Pettingell's Advertising Agency in Boston; order was to print it in the Wenham-Hamilton Times; the advertisement appeared in the Mercury and the Beverly Weekly Times, because they are practically the same paper, the only changes being made are the headings, the place of publication and those advertisements which are ordered changed, and they are all printed and published in the office in Beverly."

On cross-examination, the witness testified: "I should say that Hamilton has not more than one thousand inhabitants and Wenham about the same; there is no paper published in either of these towns at all; Beverly papers are the nearest to this land of any that are published, and the notice was published in the three weeklies referred to."

*J. J. Flaherty, J. F. Quinn & W. H. Twohig,* for the plaintiff.
*H. P. Moulton & F. V. Wright,* for the defendants.

HOLMES, C. J. This is a bill to redeem land from two mortgages. It was dismissed by the judge of the Superior Court who tried the case, and it comes here by appeal. The judge

found that the mortgagee acted in good faith and with reasonable regard for the rights of the mortgagor, and that the property was fairly sold and brought a fair price. Of course these findings, so far as they depend on oral testimony as to the conducting of the foreclosure, would not be disturbed except upon strong reasons. We see no ground for doubt that the findings were right, subject to the questions which we shall mention. Some comment is made upon an alleged refusal by the mortgagee to accept $400, (about the amount of the interest for one year, interest for more than two years being due,) if he would postpone the sale. But the mortgagee evidently regarded the suggestion as the talk of an irresponsible person, and very probably was right. The money was not produced. There is no indication of any animus on his part other than an old man's weariness and desire to get rid of a mortgage which was always in arrears. He put the foreclosure into professional hands, and relied upon those whom he employed to see that all proper steps were taken. *Cranston* v. *Crane*, 97 Mass. 459, 464.

In the first place, the plaintiff claims a right to redeem as matter of law because the bill, although filed after the sale, was brought before the conveyances were executed to carry it out. We are of opinion that she has no such right. Unless there was some defect in the proceedings, her rights were gone when the contract was made. This, we apprehend, would be so apart from St. 1888, c. 433, (see *Way* v. *Mullett*, 143 Mass. 49, 53; Pub. Sts. c. 181, § 21,) and we see no reason to doubt that that statute means that, even before the sale, if the property has been advertised, the filing of a bill to redeem shall not interrupt the mortgagee's right to proceed to conclude the plaintiff's rights, unless the amount due is paid into court or an injunction issues. See 143 Mass. 55, 58. The plaintiff failed to pay the money into court and no injunction issued.

Next it is said that the advertisement was bad, because it described the premises as woodland and did not mention that there was a somewhat well known hotel, the Winnepoyken House, upon them, and also because the paper selected was not a proper one. The first mentioned fact undoubtedly would be a matter to be considered, if strictly true, although it hardly of itself and necessarily would invalidate the sale. But it is

not strictly true. The sale under the first mortgage is announced to take place in front of the Hotel situated on the premises. As to the newspaper the facts are these. The one selected was the Wenham-Hamilton Times, and it was chosen in order to comply with Pub. Sts. c. 181, § 17, St. 1882, c. 75, under the impression that it was published in the town of Hamilton where the mortgaged property was situated. Probably it was a mistake to suppose that the paper was published there in such sense as to make the choice of the paper compulsory, since it was a many headed publication like that dealt with in *Rose* v. *Fall River Five Cents Savings Bank*, 165 Mass. 273, and seems to have had its home in Beverly. But the choice was made in good faith by the agent to whom the matter was intrusted. The paper was published in the county, which is the only requirement of the mortgage and the alternative requirement of the statute. In its various forms it circulated in the town of Hamilton and the vicinity, and, although it is said that it does not appear that it was published at the proper times under its other names, it is for the plaintiff to show that it did not do so, so far as the fact is material. The chances are that the publications were simultaneous. The selection of the Wenham-Hamilton Times carried out in the nearest way possible the policy of the statute, which aims at making the sale known in the neighborhood rather than in large centres. We are of opinion that the foreclosure cannot be upset on this ground. See *Stevenson* v. *Hano*, 148 Mass. 616.

It is said that, if the advertisement was sufficient, at least the sale was bad. The first mortgage embraced three lots, the second covered these and three others. The advertisements were printed consecutively, and announced both sales for the same time, that under the first in front of the hotel, the other in front of the barn. It is complained that, whereas the advertisement of the second mortgage announces a sale of the six lots, the first three subject to the first mortgage, in fact the sale under the first mortgage took place first and therefore only the three other lots remained to be sold, although in form the sale followed the advertisement. But it is obvious that this is the merest technicality. The persons present at the first sale walked across the road and attended the second, understanding

what had been done. It could not matter to an intending purchaser under the second sale whether he bought the whole six lots only to see his title to three wiped out five minutes later, or whether he bought the three which were all that he could get. If any such intending purchaser had wished to buy under the second mortgage and to redeem from the first, he would have bid or made a tender at the first mortgage sale, which was all that he could do in any event. There is not the slightest reason to think that the mortgagor suffered, and the judge finds that the lots not included in the first mortgage brought a fair price at the second sale. The purchaser does not complain. He is a defendant. There was no attempt to depart in substance from the power given by the mortgage and from what was advertised, as in *Donohue* v. *Chase*, 130 Mass. 137, and this is not a case where the advertisement was wrong, as in *People's Savings Bank* v. *Wunderlich*, 178 Mass. 453, and *Fenner* v. *Tucker*, 6 R. I. 551. See *Bottineau* v. *Ætna Life Ins. Co.* 31 Minn. 125.

The last ground of attack, also bearing on the sale, is the allegation that the purchaser bought off another bidder from the second sale for $100. Whatever happened was without the privity or knowledge of the mortgagee, and the judge finds that the man alleged to have been bought off did not intend to become a purchaser in good faith, but merely meant to extort a payment by threatening to run the property up, and that the payment was made under that pressure, not for the purpose of preventing an honest bid. The finding of the judge was fully warranted by the evidence. We think it unnecessary to say more.

*Bill dismissed.*