# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Marc J. Slotnick,**
**Defendant Below, Petitioner**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0404** (Jackson County 12-C-40)

**Brent D. Sayre,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioner Marc J. Slotnick, by counsel Josef A. Horter, appeals the order of the Circuit Court of Jackson County, entered March 21, 2013, that granted summary judgment in favor of Respondent Brent D. Sayre in respondent's breach of contract action against petitioner and a second man, John W. Parker, who is not a party to this appeal.[1] Mr. Parker was the purchaser of real property at a foreclosure sale. However, in the order on appeal, the circuit court rescinded Mr. Parker's deed and awarded the property to respondent, who was the other bidder at the foreclosure sale. Petitioner is an attorney who served as the trustee at the foreclosure sale. Respondent, by counsel Leah A. Chappell, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises from a February 22, 2012, foreclosure sale of a 130-acre property in Jackson County known as the "Click Farm" or "Garrett Farm." In 1993, Charles and Alma Garrett[2] executed a deed of trust for the property which provided that, upon default of the principle obligation, a trustee shall "sell the real estate herein described and herein conveyed at public auction *for cash* to the highest bidder at the front door of the Courthouse . . . after first having published notice of the time, place and *terms of sale . . . .*" (Emphasis added.)

---

[1]John W. Parker filed a separate appeal against petitioner and respondent in the instant case. *See John W. Parker v. Brent D. Sayre and Marc J. Slotnick*, No. 13-0428 (W.Va. Supreme Court, November _, 2013) (memorandum decision).

[2]Charles and Alma Garrett were not parties to respondent's action for breach of contract below.

1

In 2007, petitioner was named a trustee of the property. At the same time, Mr. Parker was assigned the beneficial interest in the lien on the property. Thereafter, the Garretts defaulted on their note. The amount due on the note was $101,000.

Following the Garretts' default, and at Mr. Parker's request, petitioner placed a notice of sale in a local newspaper which said, in part: "TERMS OF SALE: *CASH ONLY*. PAYABLE IN FULL AT TIME OF SALE[.]" (Emphasis added. Capitalization in the original.) The notice also reserved the trustee's (petitioner's) right to reject any and all bids.

Respondent attended the February 22, 2012, foreclosure sale with his attorney. In the minutes before the sale, respondent's attorney spoke with petitioner to inquire about the note being foreclosed. During that conversation, respondent's attorney asked petitioner whether he would accept a bank check as payment for the property. Petitioner replied, "No, you have to have cash. You have to have green backs." Respondent claims that this was the first time he was notified that payment was to be made in U.S. currency. In response, respondent informed petitioner that he had a line of credit from a local bank and could pay for the property with a bank check within five or ten minutes after the sale.

Petitioner began the sale by informing those present that the only acceptable payment was U.S. currency and that payment was to be delivered "at the instant" the sale was "knocked down." Mr. Parker bid $103,000 for the property. On respondent's behalf, respondent's attorney bid $103,100. Mr. Parker then displayed a sealed garbage bag to the crowd that allegedly contained $225,000 in U.S. currency; thereafter, Mr. Parker bid $105,000. Respondent's attorney responded with a $105,100 bid on behalf of his client. Respondent's $105,100 bid was the highest bid. However, petitioner rejected it because respondent could not pay instantly in U.S. currency. There being no further bids, the trustee awarded the property to petitioner.

Following the foreclosure sale, petitioner executed a special warranty deed that conveyed the property to Mr. Parker. Of the $105,000 paid by Mr. Parker for the property, petitioner received $5,000 toward his attorney's fees for the instant case and was reimbursed for the costs of the sale. Mr. Parker received the remainder.

On March 12, 2012, respondent filed the instant action against petitioner and Mr. Parker claiming breach of fiduciary duty and breach of contract. Respondent sought the equitable remedy of specific performance, i.e., a deed to the property in exchange for $105,100. Petitioner and Mr. Parker responded with a motion to dismiss respondent's lawsuit. By order entered May 14, 2012, the circuit court dismissed respondent's claim for breach of fiduciary duty. Thereafter, both sides filed motions for summary judgment on the breach of contract claim, which the circuit court denied.

The trial on respondent's breach of contract claim commenced on February 5, 2013. At the close of respondent's case-in-chief, the circuit court denied petitioner and Mr. Parker's motion for judgment as a matter of law. Thereafter, petitioner and Mr. Parker admitted that their evidence was the same as respondent's (with the exception of the evidence provided by respondent's experts). The circuit court then found that there were no factual issues in dispute and granted summary judgment in favor of respondent. The circuit court also rescinded Mr.

Parker's deed for the subject property and ordered that respondent was entitled to specific performance. Following the circuit court's ruling, petitioner and Mr. Parker proffered their testimony.

The circuit court's ruling was memorialized in a "Judgment Order" entered March 21, 2013. In the order, the circuit court found that (1) the first time any bidder knew that "cash only" meant "U.S. currency" was at the foreclosure sale; (2) Mr. Parker had been petitioner's client for many years before the sale; (3) Mr. Parker was the only bidder who brought U.S. currency to the sale; and (4) respondent did have a line of credit sufficient to meet his bid of $105,100, and a teller was on-call ready to deliver, within minutes, payment by bank check. The circuit court then concluded that (1) as the trustee, petitioner had a duty to maximize the price for the property; (2) payment by U.S. currency was not required by the deed of trust or announced in the notice of sale; (3) payment by U.S. currency at the "instant" the sale was "knocked down" was not commercially reasonable; (4) petitioner and Mr. Parker colluded to ensure that only Mr. Parker could submit a conforming bid; and (5) the foreclosure sale was conducted in violation of the terms of the deed of trust and Chapter 38, Article One, of the West Virginia Code.

On appeal to this Court, petitioner challenges the circuit court's award of summary judgment in favor of respondent.

Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). We accord a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Finally, in considering a motion for summary judgment, we review all facts and inferences in the light most favorable to the nonmoving party. *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59-60, 459 S.E.2d 329, 336-37 (1995).

With these standards in mind, we review petitioner's assignments of error. Petitioner first argues that the circuit court erred in relying on expert testimony to define "cash." Respondent's experts, two local attorneys with many years of experience in foreclosure sales, testified that at such sales in West Virginia, "cash" customarily meant any ready negotiable form of payment, including cashier's checks and bank checks. Although the circuit court found respondent's experts' testimony to be credible, it specifically stated that "what is meant by 'cash,' in the contexts of foreclosure proceedings, is a question of law to be determined by the [c]ourt."

In a similar vein, petitioner argues that, as a matter of law, the term "cash" as found in the deed and the notice of sale meant, "U.S. currency" only. The trial court properly relied on

3

accepted legal authority, including *Black's Law Dictionary*,[3] in determining that "cash" may be defined as U.S. currency *and* many other things, including bank checks. Although petitioner cites to American Jurisprudence and other legal sources for the definition of "cash," none of these sources have been adopted in West Virginia's jurisprudence.

Petitioner next argues that the circuit court erred in finding that he violated West Virginia Code § 38-1-5. That section provides that the "sale [of a trust lien deed] shall be made upon such terms as are mentioned in such deed." Here, the deed of trust required only that payment be made in "in cash." No mention was made of payment in U.S. currency. Because a trustee's authority flows from the deed of trust appointing the trustee and Chapter 38, Article One, neither a trustee nor the owner of the note on a property subject to a foreclosure sale can freely negotiate the terms of sale outside those expressly set forth in the deed of trust. As such, by requiring payment in U.S. currency, petitioner did, in fact, violate the terms of § 38-1-5.

Petitioner next argues that the circuit court erred in finding that respondent had a line of credit available on the date of the foreclosure sale because the record contains evidence to the contrary. We disagree. The record on appeal supports the circuit court's findings. At trial, an employee from respondent's bank offered uncontested testimony that, on the date of the sale, (1) respondent had a line of credit of at least $105,100, (2) a bank teller from respondent's bank was ready to deliver a bank check to petitioner on respondent's behalf immediately following the sale; and (3) respondent's line of credit was not withdrawn until after the sale at respondent's request.

Petitioner's next assignment of error is that the circuit court erred in finding that a contract was formed between himself and respondent at the foreclosure sale because he and respondent never mutually assented to the type of consideration for the property (i.e., U.S. currency versus a bank check). Again, we disagree. The record on appeal shows that a contract was clearly formed between the parties in the instant case. Petitioner made an offer by publishing the notice of sale of the subject property, and by holding the foreclosure sale. The record also clearly shows that respondent accepted the offer by placing the highest bid, which he would have been able to pay in full within minutes after the sale was "knocked down." In Syllabus Point One of *First National Bank of Gallipolis v. Marietta Manufacturing Co.*, 151 W.Va. 636, 153 S.E.2d 172 (1967), we defined a contract as an offer and an acceptance supported by consideration.

Petitioner also argues that the circuit court erred in finding that it was commercially unreasonable to require payment in cash at the instant the sale was knocked down. Requiring bidders at a foreclosure sale to carry huge sums of U.S. currency is not only impractical, it is unsafe. Further, as the circuit court noted, respondent would have been able to pay for his bid by bank check within just a few minutes of the sale. In light of the standard of review in this case,

---

[3]In the order on appeal, the circuit court stated: "'Cash' is, however, defined in *Black's Law Dictionary* (8th Edition) as 'money or the equivalent; usually ready money. Currency and coins, negotiable checks, and balances in bank accounts.' *Black's Law Dictionary* is recognized by State and Federal Courts as an authoritative source for definitions of words commonly found in statutes and case law. ***See, e.g., Arneault v. Arneault***, 639 S.E.2d 720 (W.Va. 2006)." (Boldface letters in original.)

4

we do not find that the circuit court erred in concluding payment "in the instant" the sale was "knocked down" was commercially unreasonable.

Petitioner's next assignment of error is that the circuit court erred in finding that he and Mr. Parker colluded to impose artificial terms on the foreclosure sale. As the circuit court noted, the record on appeal supports the finding that petitioner and Mr. Parker colluded to depress the amount of money bid for the property and to facilitate Mr. Parker being the only bidder able to submit a conforming bid. We find it significant that although petitioner complains that respondent had no proof of his ability to pay for his bid at the auction (other than his statement claiming that he had a sufficient line of credit), respondent never required Mr. Parker to open the garbage bag and show that it contained sufficient U.S. currency to pay for his (Mr. Parker's) bid. Further, petitioner conducted the sale in accordance with Mr. Parker's wishes. Nothing in West Virginia law allows a trustee to place his attorney-client relationships ahead of his fiduciary duty. Hence, the circuit court did not err.

Petitioner last argues that the circuit court erred in finding that petitioner breached his fiduciary duty as a trustee to respondent. Petitioner contends that he had no duty to respondent. The circuit court found that petitioner breached his duty to respondent because, as a trustee, he was required to "always act impartially, and as far as possible for the advantage of all parties interested in the sale, and [to] use reasonable efforts to obtain the best price he can." *Lucas v. Fairbanks Capital Corp.*, 217 W.Va. 479, 485, 618 S.E.2d 488, 494 (2005) (citing *Stephenson v. Point Pleasant Bldg. & Loan Ass'n*, 108 W.Va. 701, 703, 152 S.E. 790, 790 (1930)). The circuit court also found that petitioner breached his duty to bidders at the sale by failing to notify them that payment was required to be in U.S. currency. As we said in Syllabus Point 2 of *Russell v. Webster Springs National Bank*, the purpose of the notice of sale is to "secure bidders by informing the public of the nature and condition of the property to be sold, and of the time, place and *terms of sale* so as to prevent a sacrifice of the property . . . ." *Id.*, 164 W.Va. 708, 265 S.E.2d 762 (1980) (emphasis added). *See also* West Virginia Code § 38-1-4.[4] Based on the record in this case, we cannot say the circuit court erred in finding that petitioner failed to act impartially and failed to properly notify potential bidders of the terms of the sale.

Upon a careful review of the parties' briefs and the record on appeal, and in light of the standard requiring this Court to view all facts and inferences in the light most favorable to the non-moving party, we conclude that the circuit court correctly found no genuine issue as to any material fact and that respondent was entitled to a judgment as a matter of law. We hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

---

[4]West Virginia Code § 38-1-4 provides in part as follows: "Every notice of sale by a trustee under a trust deed shall show the following particulars: (a) The time and place of sale; (b) the names of the parties to the deed under which it will be made; (c) the date of the deed; (d) the office and book in which it is recorded; (e) the quantity and description of the land or other property or both conveyed thereby; and (f) *the terms of sale*." (Emphasis added.)

5

                                                                Affirmed.

**ISSUED:**  November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Margaret L. Workman